UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICTOR BILLIOT                                CIVIL ACTION

VERSUS                                        NO: 07-7705

CENAC TOWING COMPANY                          SECTION: R(2)

**ORDER AND REASONS**

Before the Court is Cenac Towing Company's motion for partial summary judgment. For the following reasons, the Court GRANTS the motion.

I.  **BACKGROUND**

This action arises out of injuries plaintiff Victor Billiot sustained while working as a deckhand aboard the M/V NAN CENAC. Plaintiff began working with defendant Cenac Towing Company in August 2006. Plaintiff suffers from factor IX deficiency or Hemophilia B, which impairs his body's ability to properly coagulate blood. (R. Doc. 31-1, Letter from Alice Cole). Because

of his hemophilia, plaintiff experiences bleeding episodes into his muscles and joints that require him to infuse himself with factor IX to stop the bleeding. (R. Doc. 31-1). Plaintiff did not disclose this condition on Cenac's pre-employment medical questionnaires, but he asserts that he told the physician about it during his pre-employment physical. (R. Doc. 29, Billiot Depo., 57:10-15).

Plaintiff's medical problems were not limited to his hemophilia. Plaintiff periodically experienced abdominal pain before his employment with Cenac. (R. Doc. 29, Exhibit 5, Lutz Declaration). Between 2003 and 2006, he visited the emergency room four times with complaints of abdominal pain. (Lutz Declaration). After his fourth visit to the emergency room, plaintiff was diagnosed with benign epigastric pain and was referred to a gastroenterologist. (Lutz Declaration).

Plaintiff alleges that he suffered a gastroinestinal injury in mid-February 2007 when he picked up a heavy rope aboard the NAN. (R. Doc. 31-1, Billiot Depo., 14:8-20). Plaintiff had previously told the Captain that he could not pull the heavy rope without a winch. (R. Doc. 31-1, Billiot Affidavit at ¶2). Plaintiff claims that "he experienced severe gastrointestinal injury immediately following pulling on a heavy rope." (Billiot Affidavit at ¶3). Despite his injuries, plaintiff remained on

the vessel for a number of hours. After deboarding the vessel on February 11, 2008, he was admitted to Tulane hospital and was diagnosed with erosive duodenitis, which had caused severe bleeding in his gastrointestinal tract. (R. Doc. 29, Exhibit 4). Plaintiff was discharged on February 17, 2008, but his gastrointestinal problems continued. He had additional bleeding episodes in April, May, and July and was hospitalized three times during those months. (R. Doc. 29, Exhibit 5). Because of his recurrent health problems, plaintiff has been unable to return to work as a seaman. (R. Doc. 31-1).

Plaintiff sued Cenac on October 31, 2007, alleging claims under the Jones Act and general maritime law. Defendant moves for summary judgment on plaintiff's Jones Act negligence claim and his unseaworthiness claim based on lack of causation. Defendant has not moved to dismiss plaintiff's maintenance and cure claim.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the

nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325; *Lavespere,* 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

**III. DISCUSSION**

Under the Jones Act, the plaintiff has a "featherweight"

4

burden of proving causation. *See Davis v. Odeco*, 18 F.3d 1237, (5th Cir. 1994); *Bommarito v. Penrod Drilling Corp.*, 929 F.2d 186, 188(5th Cir. 1991). *See also Johnson v. Cenac Towing, Inc.*, 544 F.3d 296 (5th Cir. 2008) ("The standard of causation in Jones Act cases is not demanding."). Plaintiff must show that "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). This means that the evidence needed to support a jury verdict need only be slight, not that the employer's standard of care is anything other than ordinary prudence. *Id.* at 337-38. But a plaintiff must establish more than mere "but for" causation. *Johnson*, 544 F.3d at 302. Plaintiff must show that the employer's negligence was the "legal cause" of the injury. *Id.*, *see also Gavagan v. United States*, 955 F.2d 1016, 1019-20 (5th Cir. 1992).

Plaintiff's burden is more stringent in an unseaworthiness claim. *See Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1352 (5th Cir. 1988). Unseaworthiness requires proof of proximate cause. *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991). Plaintiff must show that the "unseaworthy condition played a substantial part in bringing about or actually causing

the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Id.* at 1354.

Defendant avers that plaintiff cannot show that any acts or omissions of the defendant caused plaintiff's gastrointestinal bleed. In support of its contention, defendant has submitted the deposition testimony of Dr. Cindy Anne Leissinger, the director of the Louisiana Comprehensive Hemophilia Care Center, and the affidavit of Dr. Brobson Lutz, a physician specializing in internal medicine. Dr. Leissinger, who has treated plaintiff since he was a child, testified that gastrointestinal bleeding of the sort plaintiff suffered is not caused by strenuous activity. In her deposition, Dr. Leissinger explained:

> Q: Can a hemophiliac begin to experience internal bleeding just from strenuous activity, lifting heavy things?
>
> A. Not in my experience. Not internal bleeding in the sense of GI bleeding. We have seen people strain muscles and have bleeding into muscle beds, particularly in the lower back we've seen that. And that can be related to unusual twisting, turning or straining in a certain position, but other than that, internal bleeding in an organ such as the GI tract or the liver or the heart would not occur with strenuous activity.
>
> Q: So internal bleeding, from your experience with hemophiliacs, could not be related to just a heavy lifting situation?

>   A. Well, I kind of qualified that. As I said, there
>   are these internal muscle bleeds we certainly see can
>   lead to bleeding, and I've also seen hematuria, or
>   blood in the urine, that results from heavy lifting or
>   strenuous activity, but gastrointestinal bleeding
>   inside of the lumen of the intestines of the stomach, I
>   have never seen that caused by strenuous activity, nor
>   have I heard of it being caused by it.

(R. Doc. 29, Ex. 1, Depo. of Leissinger, 30:24-31:24). Dr. Lutz similarly explained that gastrointestinal bleeds like plaintiff's are not related to trauma, but rather, result from erosive duodenitis or other peptic ulcerations. (Lutz Declaration p. 6). Dr. Lutz concluded that plaintiff's February 2007 bleed resulted from a natural progression of underlying peptic disease, the symptoms of which caused plaintiff to visit the emergency room four times before his employment with Cenac. (Lutz Declaration p. 6).

Plaintiff's response largely argues that plaintiff's failure to disclose his hemophilia on his pre-employment questionnaires was not purposeful. But this is not relevant to the causation question at issue. Plaintiff has provided no evidence that strenuous activity, such as lifting heavy objects, causes gastrointestinal bleeds like the one suffered by plaintiff. Plaintiff's convoluted argument that "duodenitis causes bleeding from the gastrointestinal tract, and hemophilia typically is characterized, primarily, by bleeding into the muscles" is

7

inapposite.  Plaintiff's medical records indicate that he sustained a gastrointestinal bleed, not a joint bleed, in February 2007.  Plaintiff's complaint also alleges injuries to his gastrointestinal tract, not his joints. (R. Doc. 1 at ¶VI). Plaintiff has presented no evidence to suggest that he suffered joint bleeds in addition to his gastrointestinal bleed in February 2007.  And plaintiff has presented no evidence to suggest that his gastrointestinal bleed was caused by lifting the heavy rope aboard the NAN, rather than by erosive duodenitis. Without any evidence, plaintiff cannot satisfy even the "featherweight" burden of causation in Jones Act cases, much less the more demanding burden in the unseaworthiness context.

Further, plaintiff has not shown that there is a genuine issue of fact as to his allegation that the Captain negligently delayed in getting him to shore to seek medical treatment. Plaintiff's affidavit states that "[plaintiff] immediately informed the vessel captain of his injury and pain" and that "the vessel captain waited hours before allowing him to exit the vessel, despite his medical condition." (R. Doc. 31-1, Billiot affidavit at ¶¶4-5).  But plaintiff's earlier deposition contradicts any claim that the Captain was negligent in failing to get him to shore.  In his deposition, plaintiff explained that on the morning of the accident, he told the Captain only that he

"wasn't feeling good" and asked if he could lie down. (R. Doc. 49, Billiot Depo., 103:22-104:3). The Captain told him he could, and plaintiff subsequently rested in bed until about half-past noon. (Billiot Depo., 104:1-3, 108:1-5). Plaintiff stated that he could have gotten off the vessel that afternoon, but that he wanted to "ride it out" since he did not know what was wrong. (Billiot Depo., 105:5-10). It was close to midnight when plaintiff told the Captain that he needed to get off the boat. (Billiot Depo., 113:18-114:15). A deposition exchange went as follows:

> Q: And by midnight of the day that you lifted the rope, you got off of the boat.
>
> A. I got off.
>
> Q. Is that right?
>
> A. Yes. I had to get off.
>
> Q. Before you got off did you ever ask the captain, I need to get off the boat?
>
> A. No.
>
> Q. At anytime --
>
> A. It was a last-minute decision. I was scared -- like I said, I was scared. I was just trying to ride it out to see what was wrong, if it was going to go away or

9

what it was going to do.

(Billiot Depo., 115:12-24). This account contradicts the assertion in plaintiff's affidavit that "the vessel captain waited hours before allowing him to exit the vessel, despite his medical condition." Self-serving assertions that contradict previous sworn testimony are not sufficient to overcome summary judgment. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992). The nonmovant cannot manufacture a disputed issue of material fact with "an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors,* 72 F.3d at 495. Plaintiff's affidavit does just that. It impeaches his prior testimony that he did not ask the vessel captain to leave the boat until midnight without explaining why he testified as such in his deposition. The one-sentence assertion that purports to contradict the lengthy explanation of the incident in his deposition does not create a factual issue. Because plaintiff has not carried his burden of showing that factual issues exist, summary judgment is appropriate on plaintiff's Jones Act and unseaworthiness claims.

**IV. CONCLUSION**

Accordingly, the Court GRANTS defendant's motion for partial summary judgment.

New Orleans, Louisiana, this __2nd__ day of April, 2009

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

11