UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VICTOR BILLIOT                          CIVIL ACTION

VERSUS                                  NO: 07-7705

CENAC TOWING COMPANY                    SECTION: R(2)


**ORDER AND REASONS**

Before the Court is Cenac Towing Company's motion for
summary judgment. (R. Doc. 67). For the following reasons, the
Court GRANTS the motion.


I.    **BACKGROUND**

This action arises out of injuries plaintiff Victor Billiot
sustained while working as a deckhand aboard the M/V NAN CENAC.
Plaintiff began working with defendant Cenac Towing Company in
August 2006. Plaintiff suffers from factor IX deficiency or
Hemophilia B, which impairs his body's ability to properly
coagulate blood. (R. Doc. 31-1, Letter from Alice Cole). Because

of his hemophilia, plaintiff experiences bleeding episodes into his muscles and joints that require him to infuse himself with factor IX to stop the bleeding. (R. Doc. 31-1). Plaintiff did not disclose this condition on Cenac's pre-employment medical questionnaires, but he asserts that he told the physician about it during his pre-employment physical. (R. Doc. 29, Billiot Depo., 57:10-15).

Plaintiff's medical problems were not limited to his hemophilia. Plaintiff periodically experienced abdominal pain before his employment with Cenac. (R. Doc. 29, Exhibit 5, Lutz Declaration). Between 2003 and 2006, he visited the emergency room four times with complaints of abdominal pain. (Lutz Declaration). After his fourth visit to the emergency room, plaintiff was diagnosed with benign epigastric pain and was referred to a gastroenterologist. (Lutz Declaration).

Plaintiff alleges that he suffered a gastroinestinal injury in mid-February 2007 when he picked up a heavy rope aboard the NAN. (R. Doc. 31-1, Billiot Depo., 14:8-20). Plaintiff had previously told the Captain that he could not pull the heavy rope without a winch. (R. Doc. 31-1, Billiot Affidavit at ¶2). Plaintiff claims that "he experienced severe gastrointestinal injury immediately following pulling on a heavy rope." (Billiot Affidavit at ¶3). Despite his injuries, plaintiff remained on

the vessel for a number of hours. After deboarding the vessel on February 11, 2007, he was admitted to Terrebonne General Medical Center and then transferred to Tulane hospital where he was diagnosed with erosive duodenitis, which had caused severe bleeding in his gastrointestinal tract. (R. Doc. 29, Exhibit 4). Plaintiff was discharged on February 17, 2007, but his gastrointestinal problems continued. He had additional bleeding episodes in April, May, and July and was hospitalized three times during those months. (R. Doc. 29, Exhibit 5). Because of his recurrent health problems, plaintiff has been unable to return to work as a seaman. (R. Doc. 31-1).

Plaintiff sued Cenac on October 31, 2007, alleging claims under the Jones Act and general maritime law. Defendant first moved for summary judgment on plaintiff's Jones Act negligence claim and his unseaworthiness claim based on lack of causation. On April 2, 2009, the Court granted defendant's motion. Defendant now moves to dismiss plaintiff's remaining maintenance and cure claim.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A court must be
satisfied that no reasonable trier of fact could find for the
nonmoving party or, in other words, "that the evidence favoring
the nonmoving party is insufficient to enable a reasonable jury
to return a verdict in her favor." *Lavespere v. Niagara Mach. &
Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (citing
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The
moving party bears the burden of establishing that there are no
genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party
will bear the burden of proof at trial, the moving party may
satisfy its burden by merely pointing out that the evidence in
the record contains insufficient proof concerning an essential
element of the nonmoving party's claim. *See Celotex,* 477 U.S. at
325; *Lavespere,* 910 F.2d at 178. The burden then shifts to the
nonmoving party, who must, by submitting or referring to
evidence, set out specific facts showing that a genuine issue
exists. *See Celotex,* 477 U.S. at 324. The nonmovant may not rest
upon the pleadings, but must identify specific facts that
establish a genuine issue exists for trial. *See id.* at 325;
*Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. Discussion

The maritime employer's duty of Maintenance and Cure dates at least to the medieval sea codes. *See The Osceola*, 189 U.S. 158, 169-71 (1903); *Harden v. Gordon*, 11 F.Cas. 480, 482-83 (C.C.D. Me. 1823)(No. 6047). The duty obligates the maritime employer to pay for the lost wages, medical care, food, lodging, and other incidental expenses of a mariner who falls ill or is injured while in the service of a vessel.[1] *See Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730 (1943); *The Osceola*, 189 U.S. at 175. The duty is practically absolute. Unlike an employer's duties under the Jones Act, for example, liability for Maintenance and Cure is "in no sense ... predicated on the fault or negligence of the shipowner." *Aguilar*, 318 U.S. at 730. Because the duty is so broad, Maintenance and Cure has at times been compared to mandatory employer-provided health and accident insurance. *See Lindquist v. Dilkes*, 127 F.2d 21, 23-24 (3d Cir. 1942); Gilmore & Black, The Law of Admiralty 281-82 (2d ed. 1975).

In keeping with the absolute nature of the right, a

---

[1] Maintenance is the perdiem living allowance provided to the seaman. Cure is the payment of therapuetic, medical and hospital expenses. *See Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979).

plaintiff's burden of proof on a maintenance and cure claim is slight: he need only establish that he was injured or became ill while "subject to the call of duty as a seaman." *Aguilar*, 318 U.S. at 732; see also 1 Schoenbaum, Admiralty and Maritime Law § 6-28; Fifth Circuit Pattern Jury Instructions: Civil § 4.11 (2006 ed.). It is not necessary for the plaintiff to show that his injury or ailment originated during the term of his employment. The employer is liable even for pre-existing conditions that manifest themselves during the voyage. See *Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)(per curiam); *McCorpen*, 396 F.2d at 548; see also *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 529 (1938); *Stevens v. McGinnis, Inc.*, 82 F.3d 1353, 1357-58 (6th Cir. 1996).

Seamen injured in the course of their employment are entitled to maintenance and cure benefits until they reach the point of "maximum medical improvement." *See Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987). A seaman reaches maximum medical improvement when it appears "probable that further treatment will result in no betterment in the claimant's condition." *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). The court may deem that no additional improvement is possible when further treatment will result in

only the maintenance of the plaintiff's pain and suffering. *See*

*Pelotto v. N & L Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979).

Generally, the maritime employer's obligation to provide

Maintenance and Cure ends when a doctor provides a qualified

medical opinion that plaintiff has reached maximum medical

improvement. *See, e.g., Breese*, 823 F.2d at 104. Finally,

"ambiguities or doubts in the application of the law of

Maintenance and Cure are resolved in favor of the seaman."

*Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 374 n. 2

(5th Cir. 1981).

Defendant argues that its duty to provide plaintiff with

Maintenance and Cure ended on February 17, 2007 when plaintiff

was released from Tulane University Hospital. (R. Doc. 67). In

support of its contention, defendant has submitted the affidavit

and medical report of Dr. F. Brobson Lutz, a board certified

internal medicine specialist. (R. Doc. 67, Ex. 5 and 7). In

preparation to give her medical opinion, Dr. Lutz reviewed the

plaintiff's medical records and deposition testimony related to

the plaintiff's condition. (R. Doc. 67, Ex. 5-A). Dr. Lutz

notes in her report that hemophilia is an incurable disease, that

the treatment plaintiff received at Tulane after disembarking the

NAN CENAC related to his hemophilia, and that plaintiff was

reported as stable upon leaving the hospital. *Id.*

Defendant also contends that it paid, in full, for all of plaintiff's expenses incurred during his stay at Tulane University Hospital, along with other medical expenses relating to the his February hospitalization, including his medical bills from the Terrebonne General Medical Center and any associated prescriptions. (R. Doc. 67, Ex. 5). Defendant therefore argues that summary judgment is appropriate because plaintiff reached maximum medical improvement on February 17, 2007 and it paid for all Maintenance and Cure incurred beforehand. In total, defendant paid $38,477.00 for plaintiff's medical expenses. (R. Doc. 67).

The issue before the Court is whether an issue of fact remains as to defendant's duty to provide plaintiff with Maintenance and Cure after his February hospitalization. The parties do not dispute that plaintiff suffers from a preexisting medical condition--Hemophilia Type B. (R. Doc. 67, Ex. 7). Plaintiff has suffered from this medical condition since birth. *Id.* When a seaman suffers from a disease that is not curable nor caused by his service, the duty to provide Maintenance and Cure extends only for a fair time following his voyage. *See Calmar S.S. Corp. V. Taylor*, 303 U.S. 525, 530 (1938)(defining "a fair time" as the period after the voyage in which improvement in a medical condition may be expected to result from nursing, care,

8

and medical treatment).  The parties also do not dispute that

plaintiff's release from the Tulane University Hospital on

February 17, 2007 did not end his medical tribulations.

Plaintiff was admitted to the hospital in April, June, and July

2007.  (R. Doc. 67).  Each time, plaintiff sought treatment for

gastrointestinal bleeding.  *Id.*  Aside from the similarity in

condition, plaintiff submits no evidence that his later stints in

the hospital either resulted from, or were remnants of, the same

gastrointestinal problems he experienced in February 2007.  In

fact, plaintiff presents no evidence that his later

hospitalization was connected in any way to his February

injuries.  Given plaintiff's pre-existing condition and increased

susceptibility to bleeding episodes, plaintiff's April, June and

July incidents may be independent and isolated events, unrelated

to his February hospitalization.  To this end, Dr. Lutz's medical

assessment states that plaintiff left the Tulane University

Hospital on February 17, 2007 having reached the maximum medical

improvement expected for an individual with Hemophilia B.  As the

termination of Maintenance and Cure is a "medical determination"

more than a legal one, this Court finds Dr. Lutz's opinion

dispositive.  *See Breese,* 823 F.2d at 104.  Plaintiff does not

present any evidence or argument to the contrary.  Nor does

plaintiff argue that defendant's medical payments were

insufficient to cover his February hospitalization.  The
defendant is not required to pay Maintenance when Maintenance is
provided during hospitalization.  *See Springborn v. American
Commercial barge Lines, Inc.,* 767 F.2d 89, 95 (5th Cir. 1985).
Accordingly, the Court GRANTS defendant's motion and finds that
defendant does not owe plaintiff Maintenance and Cure for anytime
after February 17, 2007 or Maintenance payments during his seven
day hospitalization beforehand.


**IV.  CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's
motion for summary judgment.




New Orleans, Louisiana, this 22nd day of September, 2009

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE